## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| PATRICIA L. RUSSO-WOOD, as personal representative of the Estate of Steven Tyler Russo,<br><br>Plaintiff,<br><br>vs.<br><br>YELLOWSTONE COUNTY, *et al.*,<br><br>Defendants. | CV 17-38-BLG-TJC<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT RE: SANDRA LEONARD, AND DENYING PLAINTIFF'S MOTION TO EXTEND TIME** |

Plaintiff Patricia L. Russo-Wood, as the personal representative of the Estate of Steven Tyler Russo ("Plaintiff"), brings this action against Yellowstone County, the City of Billings, and individual officers Brian Degele and Sandra Leonard. Plaintiff asserts claims for negligence and civil rights violations after her son, Steven Tyler Russo, committed suicide while being held as a pretrial detainee at the Yellowstone County Detention Facility. (Doc. 3.) Presently before the Court are Defendant Sandra Leonard's Motion for Summary Judgment (Doc. 26), and Plaintiff's Motion to Extend Time to Respond to the Motion for Summary Judgment. (Doc. 32.) Having considered the parties' submissions the Court finds Plaintiff's Motion to Extend Time should be **DENIED**, and Leonard's Motion for Summary Judgment should be **GRANTED**.

/ / /

1

# I. PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit in the Montana Thirteenth Judicial District Court, Yellowstone County, on June 2, 2016.  (Doc. 4.)  Thereafter, the action was removed to this Court on March 17, 2017.  (Doc. 1.)

On June 22, 2017, Plaintiff served her first set of Requests for Production of Documents on the City of Billings.  (Doc. 34 at ¶ 4.)  The City of Billings responded to the requests on July 31, 2017.  (*Id.*)

On August 3, 2017, Leonard filed a Motion for Summary Judgment arguing the claims against her for negligence and civil rights violations are barred by the public duty doctrine and qualified immunity, respectively.  (Doc. 26.)

On August 17, 2017, Plaintiff filed a motion seeking an extension of time to respond to the summary judgment motion under Federal Rule of Civil Procedure 56(d), on grounds that she needed to conduct further discovery to respond to the motion.  (Doc. 33.)

Leonard filed an opposition, arguing Plaintiff has not been diligent, and that Plaintiff failed to address how additional discovery will produce evidence creating a genuine issue of material fact sufficient to defeat Leonard's defenses.  (Doc. 35.) Plaintiff did not filed a reply.

On August 24, 2017, Plaintiff filed a response to the motion for summary judgment.  (Doc. 39.)  Leonard filed a reply on August 28, 2017.  (Doc. 41.)

## II.  FACTUAL BACKGROUND[1]

Decedent Steven Tyler Russo ("Russo") was taken to the Yellowstone County Detention Facility ("YCDF") shortly after 9:00 a.m. on June 5, 2013. (Doc. 28 at ¶ 11.)  YCDF detention officers took custody and control of Russo when he was brought into the sally port of the detention center.  (*Id.* at ¶12.)  He was searched and placed into a holding cell pending his turn to be formally booked into the facility.  (*Id.*)  While he was awaiting booking, Russo requested to shower because he had soiled himself when he was tasered by law enforcement officers during his arrest.  (*Id.* at ¶ 13.)  Russo was allowed to shower.  (*Id.* at ¶ 14.)

Russo became emotional while he was taking a shower, and a YCDF officer noted "inmate very emotional, bears watching."  (*Id.* at ¶ 14.)  Then, while still in the shower, Russo's emotional state changed, and he began to laugh about being tasered.  (*Id.* at ¶ 15.)

At approximately 6:10 p.m. on June 5, Defendant Detective Sandra Leonard ("Leonard") arrived at YCDF to interview Russo.  Leonard was investigating a series of armed robberies in Billings and Russo was a suspect.  (*Id.* at ¶ 35.) Leonard did not arrest Russo or take him into custody.  (Doc. 29 at ¶ 35.)

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment and are taken from the parties' submissions and are undisputed except where indicated.

Russo was taken to a conference room in the detention center to meet with Leonard at approximately 6:15 p.m. (Doc. 28 at ¶ 36.) At 6:35 p.m., Russo signed an Advisement of Rights form, which set forth *Miranda* warnings. (*Id.* at ¶ 37.[2])

Leonard states that shortly after beginning the interview, Russo invoked his right to speak with an attorney, and therefore, she ceased the interview. (Doc. 29 at ¶¶ 22-24.) Leonard estimates the interview lasted approximately 7 minutes. (*Id.* at ¶ 24.)

Leonard states that after the interview stopped, Russo requested to use her cell phone to call his mother. (Doc. 29 at ¶ 25.) Leonard states she informed Russo that YCDF staff controlled all incoming and outgoing phone calls in the facility. (*Id.*) Therefore, she did not let him use her cell phone. (*Id.*; Doc. 40 at ¶ 8.) But at Russo's request, Leonard agreed to notify his mother that he was detained at YCDF, and Russo gave Leonard a telephone number where he believed his mother could be reached. (*Id.* at ¶ 26.)

Leonard states that in total, she spent less than 45 minutes with Russo. (Doc. 29 at ¶ 34.) During that time, she did not observe any behavior on his part that indicated he presented a suicide risk, or that he was in imminent risk of death

---

[2] Plaintiff indicates she disputes Leonard's Statement Undisputed Facts ("SUF") Nos. 35-37. (Doc. 40 at ¶ 3.) However, Plaintiff does not cite to any "specific pleading, deposition, answer to interrogatory, admission or affidavit before the court to oppose each fact" as required by Local Rule 56.1(b)(1)(B). Plaintiff simply states she "does dispute" several of Leonard's SUF.

or serious bodily injury to himself or others. (Doc. 29 at ¶¶ 29-32.) Plaintiff contends Leonard was subjectively aware of Russo's need for medical/mental health care because she assessed him as a "very troubled person" in a later phone call with Russo's mother, and because Russo told her he had been using methamphetamines for seven days with no sleep. (Doc. 40 at ¶ 8.) Leonard denies that Russo told her he had been using methamphetamines for seven days, and had not slept. (*Id.* at ¶ 33.) Leonard further states, however, that even if Russo would have told her that, it would not have changed her opinion that he was not in imminent danger or needed immediate mental health evaluation or referral to a treatment facility. (*Id.*)

After Leonard interviewed Russo, Detention Officer Degele conducted a classification interview with him. (*Id.* at ¶ 29.) The record indicates that Russo denied being suicidal, denied having a history of suicide attempts, denied having had any recent stressful experiences, and denied having been diagnosed with mental illness or depression. (Doc. 28-6 at 64.) Russo also denied using drugs. (*Id.* at 65.) Russo was untruthful regarding these matters, since it appears he had a history of substance abuse and prior suicide attempts.[3] (*Id.* at ¶¶ 72-73.)

---

[3] Russo had a history of substance abuse and mental health issues. (Doc. 28 at ¶¶ 47-49.) Russo first attempted suicide when he was 17 years old. (*Id.* at ¶ 50.) Prior to June 6, 2013, Russo had attempted suicide on at least 10 different occasions. (*Id.* at ¶ 51.) Ms. Russo had involuntarily committed Russo to a mental health facility due to concerns about his suicidal ideations. (*Id.* at ¶ 55.)

Nevertheless, Russo did not relay this history to Officer Degele on June 5, 2013, and did not request YCDF detention officers to provide him with mental health services. (Doc. 28 at ¶ 18.) Russo was returned to his holding cell after his classification interview with Detention Officer Degele. (*Id.* at ¶ 38.[4])

Later in the evening of June 5, 2013, at approximately 8:42 p.m., Leonard telephoned Russo's mother, Patricia Russo. (*Id.* at ¶ 42; Doc. 29 at ¶ 38.) Leonard told Ms. Russo that that her son was at YCDF. (Doc. 28-6 at 8; Doc. 29 at ¶ 40.) Leonard states that during the call Ms. Russo discussed her concerns about her son's drug abuse and criminal behavior. (Doc. 29 at ¶ 42.) Leonard says Ms. Russo did not express any concerns that her son was suicidal, or that he had attempted suicide in the past. (*Id.* at ¶¶ 43-45.) Leonard described having what she would consider a "mother to mother" conversation with Ms. Russo about concerns and common experiences they both had with their sons. (*Id.* at ¶ 46.) Plaintiff contends that during the phone call, Leonard told Ms. Russo, "I have been a Billing police detective for many years. I have met many bad people and many evil people, and I can tell you your son is neither. Your son is a very troubled person." (Doc. 40 at ¶ 4.) Plaintiff further asserts Leonard told her that Russo had said during the interview that he had been using methamphetamines for seven days

_____

[4] Plaintiff disputes Leonard's SUF No. 38, but again does not cite any evidence as required by the Local Rules.

straight, with no sleep.  (*Id.*)

On June 6, 2013, Russo attempted to call his mother from YCDF.  (Doc. 28 at ¶ 45.)  Later that day, Russo committed suicide by hanging himself in the shower of YCDF between 2:00 p.m. and 2:20 p.m.  (*Id.* at 2.)

On June 11, 2013, Leonard returned to her regular work shift following her days off.  (Doc. 29 at ¶ 49.)  Leonard states that upon returning to work, she learned that Russo had committed suicide.  (*Id.* at 50.)  Leonard called Ms. Russo to express her condolences.  (Doc. 28 at ¶ 46; Doc. 29 at ¶ 51.)

## III.  DISCUSSION

### A.    Plaintiff's Motion for Extension of Time Under Rule 56(d)

The Court will first address Plaintiff's Motion to Extend Time to Respond to Motion for Summary Judgment.  (Doc. 32.)  The grounds for Plaintiff's motion is she needs additional time to conduct discovery to respond to the summary judgment motion.

Federal Rule of Civil Procedure 56(d) provides:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P 56(d).

To prevail on a Rule 56(d) motion, the moving party has the burden to show "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg.*, 525 F.3d 822, 827 (9th Cir. 2008). The party seeking discovery "must make clear what information is sought and how it would preclude summary judgment." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998). Failure to comply with Rule 56(d)'s requirements "is a proper ground for denying discovery and proceeding to summary judgment." *Family Home & Fin. Ctr., Inc.*, 525 F.3d at 827. A Rule 56(d) motion may also be denied if the moving party has not been diligent in seeking discovery. *Mackey v. Pioneer Nat. Bank*, 867 F.2d 520, 524 (9th Cir. 1989).

Leonard argues Plaintiff had a sufficient opportunity to conduct discovery, but chose not to proceed with any discovery against Leonard. Leonard states that Plaintiff opted not to proceed with Leonard's deposition in mid-July, despite the fact that Plaintiff had obtained approximately 1,170 pages of discovery weeks before the summary judgment motion was filed. Plaintiff counters she could not effectively depose Leonard or other persons, until she received the final document production from the City of Billings on July 31, 2017. The Court notes that Plaintiff does not identify which document(s) produced on July 31, 2017 were

essential for an effective deposition. Nevertheless, even assuming Plaintiff was diligent, the Court finds Plaintiff has failed to carry her burden under Rule 56(d).

First, Plaintiff has not shown how additional discovery is necessary in light of the applicable deliberate indifference standard. Plaintiff alleges Leonard violated Russo's constitutional rights by exhibiting deliberate indifference to his serious mental health needs. Plaintiff states additional discovery can establish Leonard's actual or subjective knowledge of Russo's mental health needs.

Because Russo was a pretrial detainee, however, Plaintiff's deliberate indifference claim arises under the Due Process Clause of the Fourteenth Amendment, as opposed to the Eighth Amendment's Cruel and Unusual Punishment Clause. [5] *Castro v. County of Los Angeles*, 833 F.3d at 1067-68. This

_____

[5] In the past, it was assumed that the standard applicable to a pretrial detainee's conditions of confinement claims brought under the Fourteenth Amendment was the same state of mind requirement as an Eighth Amendment violation, i.e., subjective and deliberate indifference to a substantial risk of serious harm. *See Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010). That holding was called into question, however, by the United States Supreme Court in *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). In *Kingsley*, the Supreme Court applied an objective standard to excessive force claims under the Fourteenth Amendment, eliminating the requirement that the pretrial detainee show that the officers where subjectively aware that their use of force was unreasonable. *Id.* at 2472-73. More recently, the Ninth Circuit extended the *Kingsley* rationale to a Fourteenth Amendment failure-to-protect claim. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Although *Castro* did not expressly extend its holding to other Fourteenth Amendment violations, the Court sees no reason why the same rationale should not apply to Fourteenth Amendment medical care claims.

distinction is significant because the test for deliberate indifference under the Fourteenth Amendment is "purely objective," whereas the test under the Eighth Amendment contains a subjective component. *Id.* at 1071. *See also Campos v. County of Kern*, 2017 WL 915294 (E.D. Cal. Mar. 7, 2017) (applying objective standard to claim that jail officials were deliberately indifferent to pretrial detainee's medical needs, including those related to suicide prevention); *Weishaar v. County of Napa*, 2016 WL 7242122 (N.D. Cal. Dec. 15, 2016) (same).

Under this standard, the elements of a Fourteenth Amendment deliberate indifference claim are: "(1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries." *Castro*, 833 F.3d at 1071. A pretrial detainee does not have to prove any subjective elements about the officer's actual awareness of the level of risk. *Id.* Thus, a pretrial detainee must "prove more than negligence but less than subjective intent – something akin to reckless disregard." *Id.*

Consequently, since deliberate indifference under Fourteenth Amendment

does not contain a subjective component, Plaintiff does not need additional discovery aimed at Leonard's actual knowledge. *Castro*, 833 F.3d at 1071.

Second, Plaintiff indicates a desire to challenge the veracity of Leonard's affidavit. However, "the mere hope that further evidence may develop prior to trial and that such evidence will contradict the affidavits already in the record is insufficient to support [a] motion for relief under Rule 56(d)." *Rocky Mtn. Biologicals, Inc. v. Microbix Biosystems, Inc.*, 986 F.Supp.2d 1187, 1203 (D. Mont. 2013).

Finally, as Leonard persuasively argues, Plaintiff's motion fails to establish how the additional discovery is necessary in light of the qualified immunity defense. The defense of qualified immunity is not only a defense to liability, but also an immunity from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As such, qualified immunity should be "adjudicated as early as possible, ordinarily before trial and substantial discovery, to give the beneficiaries of the doctrine immunity from litigation and not merely from a judgment." *Thompson v. Mahre*, 110 F.3d 716, 719 (9th Cir. 1997). *See also Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987) (noting the qualified immunity doctrine is meant to ensure "that 'insubstantial claims' against government officials be resolved prior to discovery and on summary judgment if possible").

As will be discussed more fully below, the Court finds Leonard is entitled to

qualified immunity. Additional discovery is therefore not necessary.

Accordingly, the Court finds that Plaintiff has failed to meet her burden to establish that additional discovery is necessary.

### B.    Leonard's Motion for Summary Judgment

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to discharge this

initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact. *Kennan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).

### 1.     Plaintiff's Negligence Claim Against Leonard

Leonard argues Plaintiff's negligence claim fails because Leonard did not owe a duty to Russo, and the public duty doctrine bars her claim. Plaintiff counters that Leonard had a duty to obtain mental health care for Russo. She maintains that Russo was in Leonard's custody for 45 minutes on June 5, 2013, and therefore, the special relationship exception to the public duty doctrine applies in this case.

Negligence requires proof of a legal duty, breach of that duty, causation and damages. *Krieg v. Massey*, 781 P.2d 277, 278-79 (Mont. 1989.) "The existence of a duty is a question of law for determination by the court." *Morrow v. Bank of Am., N.A.*, 324 P.3d 1167, 1177 (Mont. 2014).

"Generally, a party cannot recover in negligence for the suicide of another 'since the act or suicide is considered a deliberate intervening act exonerating the

defendant from legal responsibility.'"  *Gourneau v. Hamill*, 311 p.3d 760, 763

(Mont. 2013).  However, a duty to prevent suicide may exist under certain

circumstances, such as in a custodial setting where the suicide is foreseeable.

*Krieg*, 781 P.2d at 278-79; *Gourneau*, 311 P.3d at 763.

When considering a negligence claim against a public entity or law

enforcement officer, it is necessary to consider the public duty doctrine.  *Eklund v.*

*Trost*, 151 P.3d 870, 878 (Mont. 2006).  "The public duty doctrine provides that a

governmental entity cannot be held liable for an individual plaintiff's injury

resulting from a governmental officer's breach of a duty owed to the general public

rather than to the individual plaintiff."  *Massee v. Thompson*, 90 P.3d 394, 403

(Mont. 2004).  "[T]he public duty doctrine expresses the policy that an officer's

overarching duty to protect and preserve the peace is owed to the public at large,

not to individual members of the public."  *Nelson v. State*, 195 P.3d 293, 301

(Mont. 2008).  Under the doctrine, a police officer generally has no duty to protect

a particular individual absent a special relationship.  *Nelson v. Driscoll*, 983 P.2d

972, 977 (Mont. 1999).  The doctrine, therefore, "generally shields law

enforcement officers from claims of negligence."  *Eklund*, 151 P.3d at 878.

Nevertheless, an exception arises "when there exists a special relationship between

the police officer and an individual giving rise to special duty that is more

particular than the duty owed to the public at large."  *Nelson v. Driscoll*, 983 P.2d

972, 978 (Mont. 1999).  A special relationship can be established in one of four ways:

> (1) by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm; (2) when a government agent undertakes specific action to protect a person or property; (3) by governmental actions that reasonably induce detrimental reliance by a member of the public; and (4) under certain circumstances, when the agency has actual custody of the plaintiff or of a third person who causes harm to the plaintiff.

> *Id.*

Leonard encountered Russo in the course and scope of her duties as a law enforcement officer.  Therefore, the public duty doctrine bars Plaintiff's negligence claim unless a special relationship is shown.  In this case, the issue is whether a special relationship existed on the basis that Leonard had actual custody of Russo. The terms "custody and custodial relationship" mean "a degree of control akin to possession, or a degree of control which results in a physical or legal restraint on one's liberty."  *Nelson*, 983 P.2d at 981.  Examples of custodial relationships include "*jailer*-inmate."  *Id.* (emphasis added).

The Court finds Russo was not in Leonard's custody.  Rather, Russo was in the custody of YCDF before, during and after his interview with Leonard. According to the undisputed facts, Russo was arrested and taken to YCDF on the morning of June 5, 2013.  (Doc. 28 at ¶ 11.)  It is also undisputed that YCDF detention officers took control and custody of Russo when he was brought into the

sally port of the detention facility. (*Id.* at ¶ 5, 12.) Leonard has submitted a video that shows when Russo arrived at YCDF through the sally port, detention center staff took physical control of him as soon as he exited the patrol car. (Doc. 31.) Thereafter, he was escorted through the facility by YCDF detention officers. (*Id.*) Russo had been held at the facility for approximately 9 hours before Leonard arrived to interview him, and he remained there after she left until his death the following day. (Doc. 28 at ¶¶ 1, 11, 36, 38.) The interview took place within the facility. (*Id.* at ¶ 36.) As Leonard points out, YCDF was responsible for all conditions of Russo's confinement. (Doc. 27 at 11.) YCDF had "immediate charge and control" of Russo while he was detained there, and he could not be considered to be in the custody of a visitor who came to interview him. *Nelson*, 983 P.2d at 979. Plaintiff offers no legal or factual support to establish otherwise.

Therefore, Plaintiff's negligence claim against Leonard is barred by the public duty doctrine.[6]

### 2. Plaintiff's §1983 Claim Against Leonard

As to Plaintiff's civil rights claim under 42 U.S.C. § 1983, Plaintiff alleges Leonard violated Steven Russo's constitutional rights under the Fourteenth

---

[6] Leonard argues she is entitled to have the negligence claim against her dismissed based on statutory immunity under Mont. Code Ann. § 2-9-305. Because the Court finds the negligence claim against Leonard is barred by the public duty doctrine, the Court does not address this argument.

Amendment by exhibiting deliberate indifference to a serious mental health need. Specifically, Plaintiff argues Leonard wrongfully denied Russo the right to call his mother and failed to refer him for an assessment by a mental health provider. (Doc. 39-1 at 8.) Plaintiff argues Leonard should have known Russo needed a mental health assessment because he told Leonard he had been using methamphetamine for seven days with no sleep. (*Id.*) Leonard counters that Russo did not have a constitutional right to use her cell phone. She also contends she had no knowledge or reason to believe Russo was an imminent suicide risk, even assuming she knew about his drug use, and that she is entitled to qualified immunity.

Qualified immunity shields federal and state officials from civil liability under 42 U.S.C. § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016). The court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) *citing Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012).  The Supreme Court has cautioned that clearly established law should not be defined at a high level of generality.  *Id.*  The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*  It is not necessary to find a case directly on point, "in which the very action in question has been held unlawful," but "in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id. citing Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The plaintiff bears the burden of proving the existence of a clearly established right at the time of the alleged misconduct.  *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992).  If the plaintiff meets this burden, the defendant then bears the burden to show that her actions were reasonable, even if they might have violated the plaintiff's rights.  *Id.*  "[R]egardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap Cty.*, 931 F.2d

624, 627 (9th Cir. 1991).

### a. Right to Use Cell Phone

Plaintiff argues Leonard's denial of Russo's request to use her cell phone to call his mother constituted deliberate indifference to his serious mental health needs. The Court finds a pretrial detainee does not have a clearly established constitutional right to use a police detective's cell phone. The cases Plaintiff cites in support of her claim are inapposite. *Harris v. Maloughney*, 827 F.Supp. 1488, 1494-96 (D. Mont. 1993) dealt with mail confidentiality and phone monitoring in the prison context. The Court affirmed that prison inmates are entitled to confidential mail and telephone communications with their attorneys. *Id.* Similarly, *Procunier v. Martinez*, 416 U.S. 396 (1974) dealt with censorship of prisoner mail. Neither of these cases stand for any broader proposition that a pretrial detainee has a constitutional right to use a law enforcement officer's cell phone to call a non-attorney. Accordingly, the Court finds Russo is entitled to qualified immunity to the extent Plaintiff's claim is based on her failure to allow Russo to use her cell phone.

### b. Mental Health Evaluation

Plaintiff also argues Leonard exhibited deliberate indifference to Russo's serious risk of suicide by failing to refer him for a mental health assessment after he told her he had been using methamphetamine and not slept in seven days. The

Court will address the second prong of the qualified immunity test first, as it is dispositive of Plaintiff's claim.

At the time of Russo's suicide, it was clearly established that a pretrial detainee had a constitutional right against deliberate indifference to the detainee's serious risk of suicide.[7] *Van Orden v. Downs*, 609 Fed. Appx. 474, 475 (9th Cir. 2015) citing *Conn v. City of Reno*, 591 F.3d 1081, 1102 (9th Cir. 2010). However, "[i]t is insufficient that the broad principle underlying a right is well-established." *Mitchell v. Washington*, 818 F.3d 436, 447 (9th Cir. 2016). *See also Saucier v. Katz*, 533 U.S. 194, 202 (2001). "The clearly established right must be framed in light of the specific context and particular facts of the case. *Mullenix*, 136 S.Ct. at 308. Thus, the issue is whether it would have been clear to a reasonable officer in Leonard's position, that her conduct was unlawful in the situation she was confronted. *Id.*

Here, Plaintiff has not cited, and the Court is unaware of any case holding that there is clearly established constitutional right to suicide intervention when the

---

[7] Leonard argues she is entitle to qualified immunity pursuant to *Taylor v. Barkes*, 135 S.Ct. 2042 (2015), which held there is no clearly established right to the proper implementation of adequate suicide prevention protocols. However, the constitutional right asserted in this case is different from that presented in *Taylor*. *Taylor* addressed the right to be properly screened for suicide. Whereas, here the right is to be free from deliberate indifference to a serious medical need, namely, a serious risk of suicide. Therefore, the Court does not find *Taylor* controls the outcome of this case.

detainee was not exhibiting a specific suicide risk. At most, Russo indicated that he had been abusing drugs and was sleep deprived, which does not equate to being suicidal. Therefore, this case is distinguishable from other cases in the Ninth Circuit involving custodial suicide.

In every case the Court has reviewed where qualified immunity was rejected, the decedent had exhibited a specific suicide risk by threatening suicide, making suicidal statements, attempting suicide, engaging in self-harming behavior, or had disclosed mental or emotional problems. *See e.g. Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010); *Conn v. City of Reno*, 591 F.3d 1081 (9th Cir. 2010); *Atayde v. Napa State Hosp.*, 2017 WL 2289351 (E.D. Cal. May 25, 2017); *Campos v. Cty. of Kern*, 2017 WL 915294 (E.D. Cal. March 7, 2017); *Weishaar v. Cty. of Napa*, 2016 WL 7242122 (N.D. Cal. Dec. 15, 2016). Here, it is undisputed that Russo did not threaten suicide or make any specific suicidal statements to Leonard; he did not disclose his mental health history or prior suicide attempts to YCDF staff; and he did not request mental health services. (Doc. 28 at ¶¶ 18, 72, 73; Doc. 29 at ¶ 30; Doc. 40 at ¶ 4.)

Therefore, the Court finds it was not clearly established that Leonard would have had a legal duty to refer Russo for a mental health assessment based on the circumstances she was presented with. Accordingly, the Court finds Leonard is entitled to qualified immunity.

### III.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion to Extend Time to Respond to Defendant Sandra Leonard's Motion for Summary Judgment is **DENIED**;

2.      Defendant Sandra Leonard's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED**.

DATED this 12th day of March 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge